# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RICHARD GIBBS,                          :
                                        :    Civil Action No. 09-1046 (NLH)
            Petitioner,     :
                                        :
            v.              :    **OPINION**
                                        :
BERNARD GOODWIN, et al.,    :
                                        :
            Respondents.    :

**APPEARANCES:**

    RICHARD GIBBS, Petitioner Pro Se
    # 232215C, 3W
    Adult Diagnostic and Treatment Center
    8 Production Way
    Avenel, New Jersey 07001

    JENNIFER L. BENTZEL, ASSISTANT PROSECUTOR
    BURLINGTON COUNTY PROSECUTOR'S OFFICE
    New Courts Facility
    49 Rancocas Road
    Mount Holly, New Jersey 08060
    Counsel for Respondents

**HILLMAN**, District Judge

    Petitioner Richard Gibbs, a convicted state prisoner, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a New Jersey state court judgment of conviction that was originally entered against him on or about July 16, 1998. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

# I. BACKGROUND

## A. Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the recitation as set forth in the unpublished opinion of the Superior Court of New Jersey, Appellate Division, decided on February 6, 2001, with respect to petitioner's direct appeal from his judgment of conviction:

> The affidavit upon which the search warrant was based was prepared by Detective Sergeant Edwin Woods on August 28, 1996. He related that K.P., the mother of ten year old N.R., reported that the child had been the victim of sexual abuse committed by defendant, her soccer and football coach. We need not recount the lurid details of the acts described by N.R. to her mother except to say that they occurred over a prolonged period of time at defendant's house. Apparently, N.R. was lured into the illicit relationship by reason of her friendship with defendant's daughter, K.G. The sexual acts were often preceded by viewing naked children on defendant's computer screen.
>
> Woods interviewed N.R., who corroborated her mother's account and described her sexual relationship with defendant in graphic detail. N.R. described how defendant would show sexually suggestive photographs on a computer screen, and would ask N.R. to "rate" them. She also recounted that defendant had taken K.G. and her to a nude beach in Sandy Hook. Woods subsequently corroborated the existence of the nude beach at that site, and through additional investigation, learned that parking passes and admission tickets were issued as a prerequisite to entry on the beach.
>
> Woods learned that defendant had a proprietary interest in a child care facility located in Pennsylvania, that he assisted a local dance studio in videotaping a female dance group, and that he was active in the elementary school that N.R. and K.G. attended. In seeking a search warrant, Woods noted his experience and training in the investigation of

pedophiles indicated that such criminals "rarely, if ever, disposed of sexually explicit material ... used in the seduction of victims," that they often collect photographs of children, that they generally maintain the names, addresses and telephone numbers of victims, that they sometimes record their sexual experiences by using a computer, and that such information is often coded in order to prevent detection by others.

The search warrant was issued on August 28, 1996. The warrant authorized the search of defendant's house, car and person and the seizure of:

> pornographic materials, including, but not limited to; video tapes, movie films, pictures and magazines depicting sexual acts; computer and computer equipment capable of generating pictures depicting sexual activity; any material indicating sexual activity with juveniles, writings or pictures which tend to indicate the identity of the victim(s) or other juveniles; photographs to be taken of the interior of the G[] residence, and a diagram of the interior layout; travel records and receipts correspondence, telephone books and records, and other documents tending to establish involvement with traveling to and/or frequenting areas permitting nudist activities with juveniles.

The warrant was executed on August 29, 1996. During the course of the search of defendant's residence, significant evidence was found. VHS video-cassettes and 8mm video-cassettes were seized. A review of the tapes revealed child pornography, and the defendant actually committing acts of sexual penetration and sexual contact with several child victims. Computer equipment was seized. A review of the computer equipment and the disks revealed 524 computer printouts containing child pornography. Other items seized from the residence included a receipt from the Blue Mountain Ski Resort in the name of N.R., a beach parking permit receipt, five receipts from Jenkinson's South Arcade, a business card for the Anderson Center for Young Children, camera equipment, several rolls of film, assorted paperwork, and ten CD-ROMS. The sole item seized from defendant's vehicle was a Sandy Hook beach parking permit and brochure.

The videotape evidence led to the discovery of the identity of seven additional victims, including defendant's daughter. The other victims were playmates of N.R. and K.G.

(Ra11,[1] February 6, 2001 Appellate Division Opinion at pp. 2-4).

B.  Procedural History

On February 7, 1997, the Burlington County Grand Jury
returned a 35 count indictment charging petitioner Richard A.
Gibbs ("Gibbs") with the following offenses: (Counts 1, 4, 8, 9,
10, 20, 21, and 26) second degree sexual assault in violation of
N.J.S.A. 2C:14-2b; (Counts 2, 5, 6, 11, 12, 22-24, 28, 29, 31-35)
endangering the welfare of a child in violation of N.J.S.A.
2C:24-4a; (Counts 3, 7, 14 and 30) first degree kidnapping in
violation of N.J.S.A. 2C:13-1b(1); (Counts 13, 25, 27 ) lewdness
in violation of N.J.S.A. 2C:14-4b(1); and (Counts 15-19 ) first
degree aggravated sexual assault in violation of N.J.S.A. 2C:14-
2a(1).  (Ra1, Indictment).  Before trial, Gibbs filed a motion to
suppress evidence, challenging the affidavit in support of the
search warrant.  The motion to suppress was denied by the
Honorable Donald B. Gaydos, J.S.C., on September 10, 1997.
(September 10, 1997 Motion Transcript, 2T).

On January 22, 1998, Gibbs entered a retraxit guilty plea
before the Honorable Patricia Richmond LeBon, J.S.C., pursuant to
a plea agreement.  He pled guilty to one count of first degree

---

[1]  "Ra" refers to the state court record exhibits provided
by the respondents.  The list of exhibits comprising the state
court record is attached to the State's answer and is docketed as
document entry no. 15, listing 31 exhibits to the record.  The
record also includes nine (9) transcripts of the state court
proceedings and a transcript of a detention hearing in the United
States District Court on December 11, 1997.

aggravated sexual assault, two counts of second degree sexual assault, and six counts of endangering the welfare of a child. At the time of his plea, Gibbs had a pretrial <u>Miranda</u>[2] motion pending and a motion to recuse the trial judge.

On July 16, 1998, Judge LeBon sentenced Gibbs to an aggregate term of 45 years in prison with a 15-year parole ineligibility, pursuant to the negotiated plea agreement.

Gibbs filed a direct appeal from his conviction and sentence before the Superior Court of New Jersey, Appellate Division. Gibbs argued that the search warrant was constitutionally defective and that his sentence was manifestly excessive. In an opinion issued on February 6, 2001, the Appellate Division rejected Gibbs' arguments concerning the search warrant, affirmed the conviction, but remanded the matter for reconsideration of the sentence. (Ra11 at pp. 4-11). The Supreme Court of New Jersey denied certification on April 27, 2001. (Ra12).

On July 24, 2002, Judge LeBon re-imposed the same sentence after placing on the record further amplification of her reasons for the sentence. (Ra13, Ra14). Gibbs appealed the sentence. On July 10, 2003, following oral argument on the excessive sentence oral argument calendar, the Appellate Division affirmed the sentence. (Ra16). The Supreme Court of New Jersey denied

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

certification on January 21, 2004.  <u>State v. Gibbs</u>, 178 N.J. 454 (2004).  (Ra18).[3]

On June 24, 2003, Gibbs filed a petition for post-conviction relief ("PCR") and a motion for recusal of Judge LeBon.  The recusal motion was denied on February 17, 2006.  (7T, Transcript of motion to recuse).  Gibbs' PCR petition was denied on June 27, 2006.  (Ra26, 8T PCR transcript).

Gibbs appealed from denial of his state PCR petition.  The Appellate Division affirmed the trial court's decision in an opinion issued on June 27, 2008.  (Ra30).  The Supreme Court of New Jersey denied certification on October 6, 2008.  <u>State v. Gibbs</u>, 196 N.J. 597 (2008).  (Ra26).

Gibbs filed this habeas petition pursuant to 28 U.S.C. § 2254, on or about March 4, 2009.  On May 1, 2009, this Court issued an Opinion and Order directing the petitioner to show cause why his petition should not be dismissed as time-barred. (Docket entry nos. 2 and 3).  Gibbs responded on May 26, 2009. (Docket entry no. 5).  In an Opinion and Order entered on November 13, 2009, this Court found that the petition was timely filed and directed that respondents file an answer to the petition.  (Docket entry nos. 6 and 7).

---

[3]  Gibbs filed a motion for reconsideration from the denial of certification.  (Ra19).  The Supreme Court of New Jersey denied reconsideration of the petition for certification. (Ra20).

Respondents answered the petition on March 1, 2010, providing the relevant state court record. (Docket entry nos. 14, 15 and 16). Petitioner filed a reply/traverse on April 5, 2010. (Docket entry no. 17).

## II.  STATEMENT OF CLAIMS

Gibbs asserts the following claims in his petition for habeas relief:

A.  Ineffective assistance of trial counsel during sentencing.

B.  Ineffective assistance of counsel in failing to advise petitioner as to the impact of the State's violation of petitioner's Fifth and Sixth Amendment rights when the police denied petitioner access to counsel during custodial interrogation.

C.  Plea should be withdrawn because petitioner was denied access to counsel during custodial interrogation.

D.  Prosecutorial misconduct and vindictive prosecution in violation of petitioner's right to due process in violation of his First, Fifth and Sixth Amendment rights.

The State essentially contends that the petition should be denied for lack of substantive merit or because it fails to raise claims of federal constitutional dimension.

III.  <u>STANDARD OF REVIEW</u>

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law.  28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); <u>accord</u> <u>Barry v. Bergen County Probation Dep't</u>, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982).  Generally, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," <u>Engle v. Isaac</u>, 456 U.S. 107, 120 n. 19 (1982), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.  That is, "errors of state law cannot be

repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

In addition to the case law, the Antiterrorism and Effective Death Penalty Act ("AEDPA") limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits. See 28 U.S.C. § 2254(d). Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on unreasonable determination of the facts in light of the evidence before the state court. See 28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings." 28 U.S.C. § 2254(d). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir.

2004)(citations and internal quotation marks omitted), <u>reversed</u> <u>on</u> <u>other</u> <u>grounds</u> <u>sub</u> <u>nom</u>. <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005); <u>see</u> <u>also</u> <u>Rolan v. Vaughn</u>, 445 F.3d 671, 678 (3d Cir. 2006). A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever. See <u>Rompilla</u>, 355 F.3d at 247. <u>See</u> <u>also</u> <u>Chadwick v. Janecka</u>, 312 F.3d 597, 605-06 (3d Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 1000 (2003)(<u>citing</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 237 (2000)(even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference)). On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply." <u>Rolan</u>, 445 F.3d at 678. <u>See</u> <u>also</u> <u>Hameen v. State of Delaware</u>, 212 F.3d 226, 248 (3d Cir. 2000)(with respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment), <u>cert</u>. <u>denied</u>, 532 U.S. 924 (2001); <u>Purnell v. Hendricks</u>, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

If the New Jersey courts adjudicated the petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied. <u>See</u> 28 U.S.C. § 2254(d). Accordingly, this Court may not grant habeas relief to the petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly

established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and petitioner is in custody in violation of the Constitution or laws or treaties of the United States. See 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28 U.S.C. § 2254(d)(1), the court must begin its analysis by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal

11

habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[4] See id. at 409-10. "The unreasonable application test is an objective one-a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of

_____

[4] See also Marshall v. Hendricks, 307 F.3d 36, 71 n. 24 (3d Cir. 2002)("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent.")(citations and internal quotation marks omitted).

the state court's factual findings." Mastracchio v. Vose, 274
F.3d 590, 597-98 (1st Cir. 2001).

IV.   ANALYSIS

A.   Ineffective Assistance of Trial Counsel

Gibbs asserts that his trial counsel was ineffective in
violation of his Sixth Amendment right to effective assistance of
counsel.  The "clearly established Federal law, as determined by
the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1),
is the standard for ineffective assistance of counsel as
enunciated in Strickland v. Washington, 466 U.S. 668 (1984).
Under Strickland, a petitioner seeking to prove a Sixth Amendment
violation must demonstrate that his counsel's performance fell
below an objective standard of reasonableness, assessing the
facts of the case at the time of counsel's conduct.  See id. at
688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller
v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S.
973 (2001).  Counsel's errors must have been "so serious as to
deprive the defendant of a fair trial, a trial whose result is
reliable."  Strickland, 466 U.S. at 688.  "In any case presenting
an ineffectiveness claim, the performance inquiry must be whether
counsel's assistance was reasonable considering all the
circumstances."  Id.

If able to demonstrate deficient performance by counsel, the
petitioner must also show that counsel's substandard performance

actually prejudiced his defense.  See Strickland, 466 U.S. at

687.  Prejudice is shown if "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability

is a probability sufficient to undermine confidence in the

outcome."  Id. at 694.  The reviewing court must evaluate the

effect of any errors in light of the totality of the evidence.

See id. at 695-96.  Thus, the petitioner must establish both

deficient performance and resulting prejudice in order to state

an ineffective assistance of counsel claim.  See id. at 697; see

also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, Gibbs first contends that his trial counsel

was constitutionally ineffective for failing to argue mitigating

factors at Gibbs' sentencing hearing on July 16, 1998.  Gibbs

contends that his lack of any criminal history prior to this

matter should have been regarded as a mitigating factor.  He also

states that his counsel should have argued to the trial judge

that Gibbs was the sole supporter of his wife and daughter, that

he had voluntarily initiated psychotherapy for his pedophilia

while on bail, and that subsequent to the remand on the

sentencing, Gibbs had made progress in the sex offender treatment

program at the Adult Diagnostic and Treatment Center ("ADTC").

These arguments were raised in petitioner's state PCR

proceeding.  Judge LeBon made the following ruling on this issue:

In sentencing the defendant, this Court acknowledged that this was his first offense and acknowledged the fact that he was seeking treatment. Then the Court, of course, found that there were no mitigating factors. The Court found that there were several aggravating factors and continued to sentence the defendant pursuant to the plea agreement.

In November of 1999, the defendant filed a notice of appeal with the Appellate Division challenging the sentence as excessive. The Appellate Division affirmed the defendant's convictions, but remanded the case for reconsideration of the sentence in order for the Trial Court to provide a more complete explication of the reasons for imposing consecutive sentences. And, it should be noted that I, who am now the PCR Judge, also was the Judge that took the plea, that did the sentence, and that did the remand.

After that was done, the defendant filed a petition for certification to the New Jersey Supreme Court in February of 2001, and in April of 2001 it was denied. On July 24th, 2002, this Court reimposed the same sentence on the defendant after providing further explanation and amplification of the reasons for imposing a consecutive sentence.

The defendant appealed that sentence. And, in July of 2003, the Appellate Division heard argument on the extensive sentencing oral argument calendar. And, the Appellate Division affirmed the defendant's sentence and concluded that it was not excessive. This was in July of 2003.

A second petition for certification to the New Jersey Supreme Court was filed which was denied in January 0f 2004. A motion for reconsideration of that denial was filed, and the Supreme Court denied that application in April of 2004. And, then a post conviction relief application has been filed.

It is clear, from that procedural record, that every single issue, matter, concern, question, argument, or disagreement about Mr. Gibbs' sentence has been heard by, determined by, and put to rest by the Superior Court Trial Division, the Superior Court Appellate Division, and the Supreme Court of New Jersey. There simply are no other issues with regard to the sentence that get to be argued at this point in time.

The Appellate Division has spoken, the Supreme Court has spoken, I have spoken twice. ...

15

> ... There simply is nothing more that this Court can say
> about it that hasn't already been said.
>
> There are other arguments that are made by the defendant.
> And, with regard to mitigating factor number 7, whether this
> Court should have found that it existed and made a mistake
> that it didn't, that issue has already been resolved through
> these appeals and remands.

(Ra26, 8T PCR transcript, 31:13-34:2).

In the first appeal challenging the sentence, the Appellate

Division stated:

> We also perceive no sound basis to disturb the sentencing
> judge's specific findings that the aggravating factors
> described in N.J.S.A. 2C:44-1a(1), -1a(2), 1a(3), -1a(4 and
> -1a(9) were present, and that no mitigating factors existed.
> These were awful crimes. Defendant took advantage of his
> position as athletic coach and lured his young victim into
> illicit sexual activities. There can be no excuse for
> defendant's despicable behavior.

(Ra11, February 6, 2001 Appellate Division opinion at pg. 10).

Moreover, in affirming Judge LeBon's denial of the PCR petition,

the Appellate Division agreed that the "ineffective assistance of

counsel claim relating the his sentence was procedurally barred,

as his sentencing arguments had been previously heard and

adjudicated on appeal." (Ra30, June 27, 2008 Appellate Division

opinion at pg. 7).

Finally, this Court notes Judge LeBon sentencing decision on

July 16, 1998, wherein she found:

> I do not find that there are any mitigating factors present.
> I acknowledge that this is, indeed, your first conviction,
> but I understand that you were sentenced and convicted last
> Friday, but since it's a situation arising out of it, I do
> want -- I recognize that this is your first conviction, and
> I recognize to some extent what Dr. Gruen has said, that you

have -- that through your treatment you have been able to
express a remorse and sorrow and to accept responsibility
for what you have done.

(Rta4, 4T July 16, 1998 Sentencing Transcript at 52:9-18).

Accordingly, based on the state court record as set forth
above, this Court finds Gibbs' argument to be totally lacking in
merit. First, to the extent a restriction was placed on counsel
at the first sentencing to argue mitigating factors, it was cured
on Gibbs' resentencing where no such restriction was imposed on
counsel. Second, it is clear from the transcripts that Judge
LeBon considered but rejected the existence of mitigating factors
sufficient to reduce the plea-bargained sentence. Indeed, Judge
Lebon noted the lack of prior criminal history and Gibbs'
treatment and expression of remorse for his crimes. Finally, it
would appear that petitioner's trial counsel at sentencing made a
strategic decision in arguing against consecutive sentences on
the federal offense[5] rather than attempt to argue for a lesser
sentence when it was plain that the aggravating factors
substantially outweighed any mitigating factors.[6] "[S]trategic

_____

    [5] As described infra pp. 29-37, Petitioner was the subject
of a parallel federal prosecution.

    [6] Petitioner's trial counsel at that time, Robert N. Agre,
Esq., submitted a Certification, dated April 25, 2006, in
response to Gibbs' arguments of ineffective assistance of counsel
during the state PCR proceedings. In his Certification, Mr. Agre
states:
    As to the issue that I failed to present any mitigating
    factors to the Court at the time of Mr. Gibbs' sentence, Mr.
    Gibbs is correct. I submitted a sentencing memorandum which
    related to the defense's contention that Mr. Gibbs should

17

choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690-91.

Therefore, this Court is satisfied from its review of the pertinent state court record that there was ample evidence to support the state court rulings on this issue. There is nothing from the record to suggest that trial counsel's performance during sentencing proceedings was not competent. This Court also finds that Gibbs has not shown, as required under 28 U.S.C. § 2254(d), that the actions of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court in Strickland, or resulted in a decision that

---

receive a concurrent state sentence to the federal sentence that he was serving. Judge LeBon made it clear from the outset of her remarks that she would not entertain an argument that any mitigating factors applied to defendant's sentence. I was, however, aware of the fact that I could still argue these facts but I thought they were without merit. As to the argument that imprisonment would have created an excessive hardship on his family, Mr. Gibbs' daughter was identified as the victim in the indictment. As a result of Mr. Gibbs' interaction with her, he was denied even supervised visitation. Thus, I do not believe that mitigating fact number 11 would apply. As to mitigating factor 12, it is true that Mr. Gibbs obtained counseling. The counseling, however, was not required by the state. Mr. Gibbs had an interest in proving that he was undertaking rehabilitative efforts and that he was not a threat to his daughter should the Court entertain his request for supervised visitation.

(Ra25, Certification of Robert N. Agre, dated April 25, 2006, at ¶ 4).

was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, this ineffective assistance of trial counsel claim for habeas relief will be denied.

Next, Gibbs argues that his counsel was ineffective for failing to advise petitioner of the import of the State's alleged violations of his Fifth and Sixth Amendment rights. Specifically, Gibbs claims that he was denied his right to counsel during his police interrogation, even though he had requested counsel be present, and consequently, he gave a confession in violation of his Fifth and Sixth Amendment rights. Gibbs appears to suggest that he would not have pled guilty had counsel made him aware of the import of the alleged constitutional violations. This claim was raised in Gibbs' state PCR proceedings.

The PCR court found:

The defendant also argues that he has received ineffective assistance of trial counsel because his trial counsel did not explain the full penal consequences of guilty plea. He contends that his attorney did not inform him that, by pleading guilty, he was waiving his right to pursue the motions that had been previously filed by his attorney.

...

It is also not true factually because, if you look at the transcript of the plea, it is an issue that is clearly discussed. ... At page 15 of the transcript, ... at page 15, line 19. This is the Court asking the question.
"BY THE COURT:
     Q    That you waive any pretrial motions and that you waive your right to appeal?

A       Correct.
            THE COURT: Mr. Agre, I know that there are certain
            motions that are now pending.  Is it your anticipation
            at the time of sentencing to withdraw those motions?"
THE COURT: Then we move to page 16.  Answer, "Yes, Your
Honor."  We then move forward.  So, clearly Mr. Gibbs was
present when this discussion took place.  And, if that was
not Mr. Gibbs' understanding, he had the opportunity at that
point in time to say something to somebody.  Hopefully it
would have been to the Trial Court, and the proceeding could
have been stopped and there could have been some further
discussion.  But, in any event, he had the opportunity to
raise that issue on direct appeal, because he knew about it,
and he didn't.  And, therefore he is procedurally barred.

(Rta8, 8T PCR Transcript at 35:21-37:10).

    Gibbs also waived these motions on the plea form he signed.

Specifically, at paragraph 20, the plea form reads: "Defendant

agrees to waive any pretrial motions (or appeals therefrom)... ."

The plea form was signed by Gibbs on January 22, 1998 on the very

page where he waived his pretrial motions.  (Ra3).  At his plea,

the trial court addressed the plea form, asking Gibbs:

        Q       Did you read the plea form?
        A       Yes, I did.
        Q       And did you go over it with your attorneys?
        A       Yes, I did.
        Q       Did you provide information to your attorneys so
                that these questions could be answered?
        A       Yes.
        Q       And are your answers truthful?
        A       Yes, they are.

(Rta3, 3T Plea Transcript at 23:8-16).  The court also asked

Gibbs if he was satisfied with his attorneys and their

representation:

        Q       Mr. Gibbs, you're represented by Mr. Agre in this
                matter and by Mr. Call.  Are you satisfied with
                the representation that they have provided you?

```
A       Yes, I am.
        Q       You think they've done a good job on your behalf
                so far?
A       Yes.
```

(Id., 31:19-25).

Moreover, in a certification of Gibbs' trial counsel, Robert

N. Agre, Esq., which was presented in the state PCR proceedings,

Mr. Agre states:

> As to the argument alleging that I failed to inform Mr.
> Gibbs of the likelihood of success that he would have had in
> challenging his confession, my recollection is to the
> contrary.  Mr. Gibbs and I had lengthy discussions about the
> viability of a motion to suppress his confession.
> Furthermore, a conditional plea was not an option in the
> case.  The [S]tate insisted on the withdrawal of all motions
> as a predicate to the plea agreement.  This was also
> repeatedly discussed with Mr. Gibbs.  It should be noted
> that, even absent Mr. Gibbs' confession, the tape of his
> activity with the victims was so overwhelmingly probative of
> guilt that a suppressed confession would have had virtually
> no impact on the [S]tate's ability to prove its case.  We
> certainly discussed the consequences of his plea and the
> impending motions.

(Ra25, Certification of Robert N. Agre, Esq., dated April 25,

2006, at ¶ 5).

In rejecting Gibbs' claim on his appeal from denial of his

PCR petition, the Appellate Division found:

> The [PCR] judge next rejected defendant's argument that he
> received ineffective assistance because counsel did not
> explain that, by pleading guilty, he was waiving his right
> to pursue previously filed motions, including his Miranda
> motion.  The judge read into the record excerpts from the
> transcript of defendant's plea hearing on January 22, 1998,
> wherein defendant stated that he understood he was waiving
> his then-pending motions, and his attorney affirmed his
> intention to dismiss those motions at sentencing.  The judge
> concluded on this point:

> [C]learly [defendant] was present when this discussion
> took place.  And, if that was not [defendant's]
> understanding, he had the opportunity at that point in
> time to say something to somebody. ... [A]nd the
> proceedings could have been stopped and there could
> have been some further discussion.  But, in any event,
> he had the opportunity to raise that issue on direct
> appeal, because he knew about it, and he didn't [a]nd,
> therefore he is procedurally barred.

(Ra30, June 27, 2008 Appellate Division Opinion at pg. 7).

After thorough review of the state court record on this issue, this Court finds that Gibbs absolutely fails to show that his trial counsel was deficient in his representation of Gibbs in the manner suggested by Gibbs concerning the pretrial motion to suppress his confession.  As set forth above, counsel had filed such motion and waiver of the motion was a condition of the plea agreement.  Gibbs acknowledged this fact during his plea hearing and on the plea form, and affirmatively agreed to waive any pretrial motions.

Moreover, Gibbs cannot show the prejudice prong under Strickland because it is unlikely that the motion to suppress his confession would have been successful so as to effect the outcome of his trial.  Gibbs' trial counsel remarked that there was such overwhelming evidence of petitioner's guilt without Gibbs' confession that suppression of the confession would have had no real impact on the State's ability to prove its case at trial. (Ra25).

Thus, this Court is satisfied from its review of the pertinent state court record that there was ample evidence to support the state court rulings on this issue. Gibbs has not shown, as required under 28 U.S.C. § 2254(d), that the actions of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court in <u>Strickland</u>, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, this ineffective assistance of trial counsel claim for habeas relief will be denied.

B. <u>Guilty Plea Should Be Withdrawn as Uninformed</u>

Gibbs also contends that his guilty plea should be withdrawn because he was denied access to counsel during his custodial interrogation, which resulted in his confession, in violation of his Fifth and Sixth Amendment rights. He argues that his trial counsel should have informed him that these constitutional violations would have barred his confession at trial, as well as any evidence obtained as a result of said confession, and thus, his guilty plea was not made knowingly, voluntarily or intelligently.

As set forth above, it is clear that Gibbs' guilty plea was informed and was made knowingly, voluntarily and intelligently.

The plea transcript and plea form shows that Gibbs waived his

pretrial motions, which included a pending motion to suppress his

confession.  Further, the Appellate Division noted the record as

follows:

> The court questioned defense counsel about defendant's
> pending motions: "Is it your anticipation at the time of
> sentencing to withdraw those motions?"  Counsel answered:
> "Yes, Your Honor."  The court asked defendant if he
> understood that he was waiving his pre-trial motions as part
> of the plea agreement.  Defendant responded: "Correct."
>
> Defendant acknowledged that he had read and understood his
> plea form and signed it voluntarily.  Defendant then gave
> the court a factual basis for his plea.  Defendant stated
> that he was satisfied with the services of both his
> attorneys and thought that they had "done a good job on
> [his] behalf so far[.]"
>
> . . .
>
> The [PCR] judge next rejected defendant's argument that he
> received ineffective assistance because counsel did not
> explain that, by pleading guilty, he was waiving his right
> to pursue previously filed motions, including his <u>Miranda</u>
> motion.  The judge read into the record excerpts from the
> transcript of defendant's plea hearing on January 22, 1998,
> wherein defendant stated that he understood he was waiving
> his then-pending motions, and his attorney affirmed his
> intention to dismiss those motions at sentencing.  The judge
> concluded on this point:
>
>> [C]learly [defendant] was present when this discussion
>> took place.  And, if that was not [defendant's]
>> understanding, he had the opportunity at that point in
>> time to say something to somebody. ... [A]nd the
>> proceedings could have been stopped and there could
>> have been some further discussion.  But, in any event,
>> he had the opportunity to raise that issue on direct
>> appeal, because he knew about it, and he didn't [a]nd,
>> therefore he is procedurally barred.

(Ra30, June 27, 2008 Appellate Division Opinion at pp. 4-5, 7).

Due process requires that guilty pleas be entered knowingly and voluntarily.  See, Boykin v. Alabama, 395 U.S. 238, 242 (1969).  It is crucial that the record show not only that a defendant was aware of his rights, but also that he "intelligently and understandingly" waived them.  Id.  See also Johnson v. Zerbst, 304 U.S. 458, 464 (1938)("[waiver must be] an intentional relinquishment or abandonment of a known right or privilege").  A guilty plea entered by one fully aware of the direct consequences of the plea is voluntary "'unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'"  Brady v. United States, 397 U.S. 742, 755 (1970) (quoting Shelton v. United States, 246 F.2d 571, 572 n.2 (5th Cir. 1956) (en banc), rev'd on confession of error on other grounds, 356 U.S. 26 (1958)).  The Court of Appeals for the Third Circuit has held that the only direct consequences relevant to evaluating the voluntariness of a guilty plea are the maximum prison term and fine for the offense charged.  See Parry v. Rosemeyer, 64 F.3d 110, 114 (3d Cir. 1995), cert. denied, 516 U.S. 1058 (1996), superseded by statute on other grounds as stated in Dickerson v. Vaughn, 90 F.3d 87 (3d Cir. 1996).  A guilty plea is made intelligently only if a criminal defendant

receives "'real notice of the true nature of the charge against him ... .'" Bousley v. United States, 523 U.S. 614, 618 (1998) (quoting Smith v. O'Grady, 312 U.S. 329, 334 (1941)).

The Third Circuit further has held that:

> no criminal defendant should plead guilty to a crime unless, and until, he has had explained to him and understands all of his constitutional rights and protections, including the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to a trial by jury, and the right to confront one's accusers.

Hill v. Beyer, 62 F.3d 474, 480 (3d Cir. 1995)(citing Boykin, 395 U.S. at 243); see also United States v. Peppers, 302 F.3d 120, 135 (3d Cir. 2002)(stating that "to be valid [a defendant's] waiver must be made with apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter"), cert. denied, 537 U.S. 1062 (2002); but see United States v. Thomas, 357 F.3d 357, 364 (3d Cir. 2004)(describing these same factors as "illustrative examples of factors that courts might discuss, not a mandatory checklist of required topics").

Further, the Supreme Court has explained that the level of detail in the plea colloquy is not dispositive:

> [T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply in general in the circumstances-even though the defendant may not know the specific detailed consequences of invoking it. ... If [the defendant] ... lacked a full and complete appreciation of all of the consequences flowing

from his waiver, it does not defeat the State's showing that
the information it provided to him satisfied the
constitutional minimum.

Iowa v. Turner, 541 U.S. 77, 92 (2004)(emphasis, internal

quotation marks, and citation omitted).

The above standards govern the validity of a guilty plea

even when a criminal defendant protests his innocence despite his

entry of a guilty plea.

[W]hile most pleas of guilty consist of both a waiver
of trial and an express admission of guilt, the latter
element is not a constitutional requisite to the
imposition of criminal penalty [when, as in the instant
case,] a defendant intelligently concludes that his
interests require entry of a guilty plea and the record
before the judge contains strong evidence of actual
guilt.

North Carolina v. Alford, 400 U.S. 25, 37 (1970).  The Supreme

Court noted further that "[b]ecause of the importance of

protecting the innocent and of insuring that guilty pleas are a

product of free and intelligent choice, various state and federal

court decisions properly caution that pleas coupled with claims

of innocence should not be accepted unless there is a factual

basis for the plea and until the judge taking the plea has

inquired into and sought to resolve the conflict between the

waiver of trial and the claim of innocence."  Id. at 38 n.10

(citations omitted).  Applying Alford, the Court of Appeals for

the Third Circuit has held that "there must always exist some

factual basis for a conclusion of guilt before a court can accept

an Alford plea."  United States v. Mackins, 218 F.3d 263, 268 (3d

Cir. 2000), cert. denied, 531 U.S. 1098 (2001).

Here, upon careful review of the record, this Court finds
nothing substantive to support Gibbs' claim that his guilty plea
was not knowing, voluntary or intelligently made.  The plea
transcript and plea form show that Gibbs affirmatively waived his
pending pretrial motions.  Certification from his trial counsel
demonstrates that Gibbs was repeatedly told and understood the
full weight of the evidence against him (without the confession),
the possible sentence he faced if convicted, and the likelihood
of conviction.  Gibbs also knew that his plea deal was predicated
on his withdrawal of pending pretrial motions.  In exchange for
his guilty plea, Gibbs would be sentenced to an aggregate term of
45 years in prison with 15 years of parole ineligibility, on only
five counts of a 35 count indictment, instead of the total
exposure of 100 years if convicted.  The State agreed to dismiss
26 counts for which Gibbs was indicted.  Thus, Gibbs was armed
with the full knowledge of his options and knowingly chose to
enter a plea of guilty as agreed to in what clearly appears to be
a very beneficial plea deal for petitioner.

Consequently, this Court cannot conclude that the
determination of the state trial and appellate courts in finding
Gibbs' guilty plea to be knowing and voluntary, resulted in a
decision that was contrary to, or involved an unreasonable
application of clearly established federal law, or resulted in a
decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the state court

proceeding.  <u>Williams v. Taylor</u>, <u>supra</u>.  Petitioner has failed to demonstrate that the state court opinions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Therefore, the Court will deny federal habeas relief on this claim because petitioner's claim is substantively meritless.

C.  <u>Prosecutorial Vindictiveness Claim</u>

Finally, Gibbs asserts a claim of prosecutorial vindictiveness in violation of his right to due process.  Gibbs alleges that the State prosecutor initially had offered a plea deal of 60 years after which the federal prosecutor threatened to bring federal charges against Gibbs if he did not take the plea deal with the State.  Gibbs refused the first plea offer and the federal prosecutor subsequently indicted Gibbs on federal charges.  Moreover, the federal prosecutor reneged on his promise not to seek a bail revocation (although Gibbs had been free on bail for 15 months without incident), and made a motion to hold Gibbs without bail, which the federal court granted.  The State then offered a new plea deal of 45 years to run consecutive to Gibb's federal sentence.  When Gibbs did not immediately accept the State's plea offer, the federal prosecutor threatened to bring another federal indictment against Gibbs adding 10 years of federal prison time.  Gibbs alleges that the threatened charges were not based on new evidence or allegations.  He further alleges that the federal and state prosecutors acted in tandem to

coerce a plea from Gibbs.  When the threat of adding four kidnapping charges was made (each carrying 25 years to life), Gibbs felt compelled to accept the State's plea deal of 45 years in prison, even though he contends that the kidnapping charges were not substantiated because he had the permission of his victim's mother to accompany Gibbs and his daughter on several days trips.

Gibbs raised this claim in his state PCR proceedings.  In denying the claim, Judge LeBon stated:

> My recollection of what happened was very similar to what Ms. Piccioni said.  There were negotiations going on between the State and Mr. Gibbs when the fed -- when he was arrested and charged in those proceedings in federal court.  I don't know what happened in any of those proceedings in federal court.  It was not necessary for me to.  The negotiations then went on.  And, the offer, which was originally 60 years do 20, eventually was accepted by Mr. Gibbs at a 45 do 15. So, whether there were threats going on or not, Mr. Gibbs had an opportunity to participate in this.
>
> And, further, if you look at the colloquy that the Court engaged in with Mr. Gibbs during the plea, there was no reference made to any of this.  And, certainly Mr. Gibbs had the opportunity at that point to bring it to the Court's attention.  And, if he thought that it was really an issue, it could have been brought up on a direct appeal.

(Rta8, 8T PCR Transcript at 39:10-40:2).

On appeal from denial of the PCR petition, the Appellate Division found that Gibbs' "'vindictive prosecution' claim [was] 'without sufficient merit to warrant discussion in a written opinion[.]'" (Ra30, June 27, 2008 Appellate Division Opinion at pg. 9).

The government is deemed engaged in prosecutorial vindictiveness if it is established that the prosecution engaged in a conduct that would not have occurred but for the prosecution's desire to punish the defendant for exercising a specific legal right.  See <u>United States v. Contreras</u>, 108 F.3d 1255, 1262 (10th Cir.), <u>cert</u>. <u>denied</u>, 522 U.S. 839 (1997).

The Supreme Court has established two distinct approaches to the question of prosecutorial vindictiveness: a presumption of vindictiveness and actual vindictiveness.  Whether to apply a presumption of vindictiveness or to require proof of actual vindictiveness depends on the factual situation and the stage of the proceedings.  In <u>North Carolina v. Pearce</u>, 395 U.S. 711, 713 (1969), <u>overruled on other grounds by</u> <u>Alabama v. Smith</u>, 490 U.S. 794 (1989), the Court examined the situation in which a defendant's criminal conviction has been set aside and a harsher sentence has been imposed following a retrial.  The Court held that "the imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be ... a violation of due process of law."  <u>Id</u>. at 724 (citation omitted).  The Court was concerned not only with actual vindictiveness on the part of the sentencing judge but also that "a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge."  <u>Id</u>. at 725 (citation omitted).  To address the latter concern, the Court applied a presumption of vindictiveness: "[W]henever a

judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding." Id. at 726.[7]

The Court applied a similar presumption in a case in which, after a defendant was convicted of a misdemeanor and exercised his right to appeal de novo, the prosecutor indicted him for a felony charge covering the same conduct. Blackledge v. Perry, 417 U.S. 21, 23, 27-28 (1974). Explaining the appropriateness of a presumption, the Court held that "the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of 'vindictiveness.'"[8] Id. at 27.

In a second series of cases, the Supreme Court held that as the factual and procedural situations presented no "realistic

---

[7] In Alabama v. Smith, 490 U.S. 794, 802 (1989), the Court overruled the companion case to North Carolina v. Pearce, Simpson v. Rice, holding that "there is no basis for a presumption of vindictiveness where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea...."

[8] This presumption, however, may be rebutted. In Wasman v. United States, 468 U.S. 559, 569 (1984), the Court initially applied the presumption of Pearce when the defendant was given a greater sentence after retrial following a successful appeal than he had been given after his original conviction. In imposing a harsher sentence, the sentencing judge relied on the fact that the defendant had been convicted of an additional offense in the time between the two sentencing proceedings. Id. at 569. The Court concluded that "[c]onsideration of a criminal conviction obtained in the interim between an original sentencing and a sentencing after retrial is manifestly legitimate. This amply rebuts any presumption of vindictiveness." Id. at 569-70.

likelihood of vindictiveness," the defendant could prevail only by demonstrating the existence of actual vindictiveness.  In Bordenkircher v. Hayes, 434 U.S. 357, 358, 365 (1978), the Court held that the Due Process Clause is not violated when a prosecutor carries out a threat made during plea negotiations to re-indict the defendant on more serious charges if he does not plead guilty to the original charges.  Emphasizing the context of the "give-and-take" of plea bargaining, the Court held that there is no "element of punishment or retaliation [for declining to plead guilty] so long as the accused is free to accept or reject the prosecution's offer."  Id. at 363.  While acknowledging that the negotiation of a plea may discourage a defendant from exercising his trial rights, "the imposition of these difficult choices [is] an inevitable-and permissible-attribute of any legitimate system which tolerates and encourages the negotiation of pleas."  Id. at 364 (internal quotation marks & citation omitted).  The Court also stressed that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."  Id.

In United States v. Goodwin, 457 U.S. 368, 370 (1982), the Court examined a different pretrial scenario-when, after a defendant demanded a jury trial on pending misdemeanor charges, the prosecutor indicted and convicted him on a felony charge.

The court below had applied a presumption of vindictiveness, but the Supreme Court cautioned that "[g]iven the severity of such a presumption, however-which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct-the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists." Id. at 373. In the pretrial setting, the Court held that there is much less need for a presumption of vindictiveness as charging decisions are much less likely to be improperly motivated. Id. at 381. "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution.... [T]he initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution." Id. at 382 (internal citations omitted). While vindictiveness in this context is not likely enough to support a presumption, the Court recognized that there is an opportunity for vindictiveness and left the opportunity open for a defendant to present evidence that could give rise to a claim of actual vindictiveness. Id. at 380-81 & 380 n. 12.

The Third Circuit and every other circuit court faced with the issue of vindictiveness have applied these two approaches: first, the court asks whether the situation warrants a presumption of vindictiveness; if not, the court then analyzes whether the defendant has provided sufficient proof of actual

vindictiveness.  Some courts have reversed the order of these two steps.  See, e.g., United States v. Esposito, 968 F.2d 300, 302-04 (3d Cir. 1992)(analyzing whether a presumption of vindictiveness was appropriate after the defendant conceded that there was no actual vindictiveness motivating the decision to re-indict him).

The Third Circuit has also addressed the factual situation where a defendant alleges vindictive prosecution stemming from the defendant's pretrial refusal to cooperate with the government.  Such cases are governed by Bordenkircher - as a defendant makes a free, informed decision not to cooperate, there is no presumption of vindictiveness in the decision to prosecute if it is "based upon the usual determinative factors."  United States v. Oliver, 787 F.2d 124, 126 (3d Cir. 1986)(citations omitted); accord United States v. DuFresne, 58 Fed. Appx. 890, 895-96 (3d Cir. 2003)(non-precedential), cert. denied, 538 U.S. 1064 (2003); United States v. Arakelyan, No. 06-CR-226-04, 2008 WL 1849126, at *2-3 (E.D.Pa. Apr. 25, 2008).  As there is no presumption of vindictiveness, a defendant may only establish a violation of due process if he presents evidence of actual vindictiveness.  Arakelyan, 2008 WL 1849126, at *3; see also United States v. Paramo, 998 F.2d 1212, 1220-21 (3d Cir. 1993), cert. denied, 510 U.S. 1121 (1994).  "Such proof ... is exceedingly difficult to make.... [A] charging decision generally is not impermissible unless it results solely from the

defendant's exercise of a guaranteed legal right, rather than the prosecutor's ordinary assessment of the societal interest in prosecution." <u>Paramo</u>, 998 F.3d at 1221 (internal quotation marks & citations omitted). Moreover, "the defendant must affirmatively establish vindictiveness, as the fact of multiple prosecutions, standing alone, does not prove an abuse of prosecutorial discretion." <u>United States v. Pungitore</u>, 910 F.2d 1084, 1112 (3d Cir. 1990), <u>cert</u>. <u>denied</u>, 500 U.S. 915 (1991). Neither, without more, does suspicious timing. <u>See</u> <u>United States v. Falcon</u>, 347 F.3d 1000, 1005 (7th Cir.2003).

The aforementioned authority makes clear that a presumption of vindictiveness is not be applicable in the instant case. The circumstances here involve pretrial plea negotiations between the prosecutors and petitioner, and there was ample evidence to support the prosecutors' discretion to indict Gibbs on the "threatened" charges. Thus, Gibbs can establish a violation of his due process rights only by demonstrating actual vindictiveness. <u>See</u>, <u>e.g.</u>, <u>Esposito</u>, 968 F.2d at 306-07 ("Where a prosecutor's conduct is equally attributable to legitimate reasons, a defendant must show actual vindictiveness for a presumption will not apply."). The state court record and petitioner's bald allegations, however, do not support this theory and do not satisfy petitioner's "exceedingly difficult" burden to prove actual vindictiveness. <u>Paramo</u>, 998 F.3d at 1221.

Indeed, any allegations concerning the federal prosecutor's threats to Gibbs are not relevant because the federal prosecutor's actions pertain to Gibbs' federal conviction which is not challenged in this action.

Moreover, even assuming that the federal prosecutor and the state prosecutor were working in "tandem" as alleged by Gibbs, the federal prosecutor's conduct in threatening to indict Gibbs on further charges was plainly within the acceptable parameters of both state and federal law. The record shows that Gibbs and his counsel were actively engaged in plea negotiations with both state and federal prosecutors. Significantly, at the time Gibbs was threatened with federal prosecution, the State offered a 60 year term with a 20 year parole disqualifier that Gibbs rejected. Then, after Gibbs was indicted on federal charges of child pornography, which were amply supported by probable cause and evidence seized on a valid state search warrant, and to which Gibbs pled guilty, the State offered a lower 45 year term with a 15 year parole disqualifier. These circumstances illustrate, not prosecutorial vindictiveness, but vigorous and beneficial plea bargaining by both petitioner and prosecutors. There is simply no evidence to support the bald claim that the threat of federal prosecution coerced a state plea, especially when the eventual state plea was substantially reduced after these ongoing "threats" and negotiations.

In other words, as in <u>Bordenkircher</u>, Gibbs actively engaged in a "give and take" plea deal with both prosecutors. Thus, Gibbs has failed to present evidence of actual vindictiveness by either state or federal prosecutor. Accordingly, as the state record shows, the prosecutors' conduct in plea bargaining with Gibbs in the manner as set forth above, did not constitute a denial of due process. There was sufficient evidence to support the convictions obtained by guilty plea on both the federal and state charges. Finally, this Court observes that, based on an initial total exposure of 100 years in prison on the state charges and a first plea offer of 60 years rejected by Gibbs, the final plea offer of 45 years with 15 years parole ineligibility was an appreciably beneficial offer that plainly belies prosecutorial vindictiveness.

Consequently, the Court finds no error of constitutional dimension with respect to Gibbs' claim of prosecutorial vindictiveness. Moreover, where the Appellate Division found that this claim was without merit to warrant discussion in a written opinion, (Ra30), and petitioner being unable to show that the state court's ruling was not contrary to, and did not involve an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts presented in the state court proceedings, the Court will deny this claim for lack of merit, pursuant to 28 U.S.C. § 2254(d).

## V. CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## **CONCLUSION**

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.   An appropriate Order follows.

/s/Noel L. Hillman
NOEL L. HILLMAN
United States District Judge

DATED: November 10, 2011

At Camden, New Jersey